# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 09-01831-TLM** |
| **LAWRENCE CHRISTOPHER** | ) | |
| **LARAWAY, JR.,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **WENDELL WELCH and** | ) | |
| **LINDA WELCH,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adv. No. 09-06079-TLM** |
| | ) | |
| **LAWRENCE CHRISTOPHER** | ) | |
| **LARAWAY, JR.,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

## INTRODUCTION

Wendell and Linda Welch (the "Welches") initiated this adversary

proceeding against Lawrence Christopher Laraway, Jr. ("Laraway"), a chapter 7

debtor, to obtain a judgment rendering certain claims they allegedly hold against

Laraway nondischargeable under § 523(a)(2)(A).[1]  The matter was tried before the Court on July 21 and 22, 2010, at which time the parties presented evidence and offered argument. At the conclusion of the trial, the Court took the § 523(a)(2)(A) issues under advisement.[2]  Having considered the record, arguments, and applicable authorities, the Court issues this memorandum of decision setting forth its findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052.

**FACTS**

In 2006, the Welches decided to build a new home.  They acquired a parcel of property in Boise, Idaho and contacted Laraway, a general contractor, to discuss construction.  On September 18, 2006, the Welches entered into a construction contract with "Diamond Ridge Construction," Laraway's company, to build their new residence.  Ex. 100 ("Contract").  Attached to the four-page Contract were plans and specifications prepared by "Diamond Ridge Construction, Inc."  *See* Exs. 100 and 101.  Contained within the construction plans and specifications were several "allowances" of varying amounts, including a "Fiberglass Pool & Spa" allowance of $30,000.  Based on the plans and specifications, Laraway

---

[1]  Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S. Code, §§ 101–1532.

[2]  While both the Welches' Complaint, Doc. No. 1, and Adversary Proceeding Coversheet, Doc. No. 2, refer to both §§ 523 and 727, neither the facts alleged in the Complaint nor the evidence presented at trial support a denial of discharge claim under § 727.  Consequently, the Court treats the Welches' claims as arising solely under § 523(a)(2)(A).

MEMORANDUM OF DECISION - 2

calculated, and the Welches agreed to pay, a total contract bid price of $484,500

for the project, subject to certain potential increases provided for in the Contract.[3]

The Contract required the Welches to secure a loan commitment or show

proof of financing shortly after execution.  *See* Ex. 100.  On or about December

21, 2006, the Welches entered into a "one time closing" loan agreement with First

Horizon Home Loan Corporation ("First Horizon").  The loan terms called for

periodic disbursements or "draws," totaling $484,500, as stages of work were

completed on the residence.

The Welches took six draws against the loan, totaling $454,500, between

January 10 and July 20, 2007.  For each draw made the Welches submitted a

"Draw Request Form" ("Request Form") and an accompanying "All Bills Paid

Affidavit" ("Affidavit") to First Horizon.  *See* Ex. 108.  The Request Forms

specified the amount of funds to be drawn and were accompanied by an "Itemized

Draw Form" ("Itemized Form") that identified the line item expenses (e.g.,

plumbing, electrical, roofing) to which the disbursed funds would be applied.  The

Request Forms, Itemized Forms, and Affidavits were all signed by Laraway, on

behalf of Diamond Ridge Construction, and either Wendell or Linda Welch.[4]  *See*

---

[3]  These increases included increased material costs beyond the contractor's control as
well as any increased costs associated with changes requested by the Welches.  These increased
costs became a source of dispute between Laraway and the Welches over the life of the project.

[4]  Where reference to only one of the Welches is required, the Court will refer to
(continued...)

MEMORANDUM OF DECISION - 3

Exs. 106, 107, and 218–223.

Both the Request Form and the Affidavit contained certifications by

Laraway and the Welches that disbursed funds were being applied to pay for labor

and materials used in the construction of the Welches' home.  The Request Form

provided:

> General Contractor/Builder and Borrower state that all of the funds that
> are requested in this "Draw Request" *will be used* to pay for the labor
> and materials which created the improvements to the subject property.
> General Contractor/Builder and Borrower further state that all funds
> advanced before the date of this request (if any) *were also used* to pay
> for labor and materials for the improvements of the subject property.

Ex. 218 (emphasis added).  The Affidavit contained a similar, yet slightly

different, statement:

> Contractor and Owner state that all of the funds that Lender has
> advanced before the date of this Affidavit (if any), *have been used* to
> pay for labor and materials, which have created the improvements on
> the Property.  Contractor and Owner state that there are no disputes
> with, or debts owed to, any mechanics, material men, or subcontractors
> for the labor or materials furnished.  There are no security interests or
> liens encumbering the Property other than those created in favor of
> Lender.  The only exceptions to this paragraph are . . . .[5]

Ex. 107 (emphasis added).  When considered together with the other loan

documents presented at trial, which indicated that funds would be disbursed only

---

[4] (...continued)
"Wendell" or "Linda."

[5]  No exceptions were listed in any of the Affidavits signed and submitted by Laraway
and the Welches.  *See* Ex 107.

MEMORANDUM OF DECISION - 4

for completed work, *see* Ex. 108, these statements suggest a process whereby requested funds were to be used to pay outstanding invoices for completed work, as provided for in the Itemized Forms, and Laraway and the Welches were to certify through the Affidavits that all debts owed to subcontractors, except those to be paid with the draw being requested, had been paid.  The testimony at trial supports this reading.  In particular, the Welches testified that their understanding was that the line items identified in the Itemized Forms represented the outstanding expenses that would be paid with the disbursed funds.  Similarly, Laraway testified that he signed the Affidavits to indicate that the subcontractors "would be" paid with the disbursed funds according to the cost breakdown in the Itemized Forms.

Work on the Welches' residence stopped in July 2007 after disagreements arose between Laraway and the Welches concerning responsibility for increased costs that had accumulated over the course of the project.  These additional expenses stemmed from certain changes requested by the Welches as well as overages on previously budgeted items.  At the time, the home was complete except for installation of the pool and spa, for which $30,000 was still available under the loan, and some landscaping and other minor work.

Amid this disagreement, the Welches discovered that some of the subcontractors had not been paid.  In the fall of 2007, three of the unpaid

MEMORANDUM OF DECISION - 5

subcontractors recorded claims of lien against the Welches' residence — The

Stucco Company, Inc. ("Stucco") for $31,420, 4 Seasons Heating and Cooling,

Inc. ("4 Seasons") for $4,318.99,[6] and Myers Enterprises, Inc. ("Myers

Enterprises") for $18,500.  Exs. 112–114.[7]  Another subcontractor, Advanced

Marble and Granite ("Advanced Marble"), filed a small claims action against

Laraway and the Welches for $9,924.50.  Ultimately, the Welches paid Stucco

$19,000 and 4 Seasons $3,810 to settle their liens.[8]  Wendell Welch testified that

the Myers Enterprises lien no longer encumbers their property, though he provided

no further explanation concerning resolution of the lien.  He further testified that

Advanced Marble dismissed their claim against the Welches after Wendell

presented the Itemized Form showing Diamond Ridge Construction had received

payment for Advanced Marble's materials and labor.

On July 8, 2008, Laraway caused Diamond Ridge Construction, Inc. to file

a voluntary petition for chapter 7 relief.  Approximately one year later, on June 25,

---

[6]  The 4 Seasons claim of lien included $3,810 for labor and materials plus $144.78 in interest, $14.21 in costs, and $350 in attorney's fees, for a total claim of $4,318.99.

[7]  The Welches testified that Diamond Ridge Construction also filed a claim of lien on their property.

[8]  The Welches were able to negotiate a lower payment to Stucco based on their assertion that Stucco's work on their home was substandard and had resulted in approximately $10,000 in damages.

MEMORANDUM OF DECISION - 6

2009, Laraway filed an individual chapter 7 petition.[9]  The Welches initiated this

adversary proceeding to have their claims against Laraway, personally, declared

nondischargeable under § 523(a)(2)(A).

**DISCUSSION AND DISPOSITION**

>   **A.   Personal liability**

Laraway asserts that even if the Court were to find his conduct fraudulent,

he was acting at all times on behalf of Diamond Ridge Construction, Inc., a

corporation, in his interactions with the Welches.  Thus, he contends, any debt

owed the Welches arising out of that relationship is a corporate, rather than

personal, debt.  The Welches argue that Laraway was doing business with them

not through his corporation, but instead personally under his assumed business

name of Diamond Ridge Construction.

To support their argument, the Welches point to a Certificate of Assumed

Business Name of "Diamond Ridge Construction" for Laraway and his ex-wife,

Jennifer Laraway, filed with the Idaho Secretary of State on April 30, 2001, Ex.

105, and emphasize that the Contract and loan documents identify only "Diamond

---

[9]  The Court takes judicial notice of the filings of record in both Diamond Ridge
Construction's corporate bankruptcy, Case No. 08-01342-TLM, and Laraway's personal
bankruptcy, Case No. 09-01831-TLM.  *See* Fed. R. Evid. 201.  Laraway's personal bankruptcy
case remains open, although the chapter 7 trustee has filed a report of no distribution.  Diamond
Ridge Construction's bankruptcy case was closed as a no asset case on July, 6, 2009.  Laraway
did not schedule as an asset in either the corporate case or her personal case, any debt claimed to
be owed by the Welches.

MEMORANDUM OF DECISION - 7

Ridge Construction," not "Diamond Ridge Construction, *Inc.*," as the general

contractor.  In response, Laraway testified that shortly after obtaining the

Certificate of Assumed Business Name he incorporated the business, but never

took any action to cancel the Certificate as he was unaware that such action was

necessary.[10]  To corroborate his testimony, Laraway introduced a copy of the

Articles of Incorporation for Diamond Ridge Construction, Inc., filed with the

Idaho Secretary of State on June 28, 2001.  Ex. 200.

It is well established that a person contracting with another as an agent is

liable as a party to the contract unless he discloses, at or before the time of

entering into the contract, the agency relationship and the identity of the principal.

*See Triad Leasing & Fin., Inc. v. Rocky Mountain Rogues, Inc.*, 224 P.3d 1092,

1096 (Idaho 2009); *W. Seeds, Inc. v. Bartu*, 704 P.2d 974, 975 (Idaho App. 1985).

The party asserting agency as a defense to personal liability on a contract bears the

burden of  showing that the principal was adequately disclosed.  *Keller Lorenz Co.

v. Ins. Assocs. Corp.*, 570 P.2d 1366, 1369 (Idaho 1977) (deeming agency as a

defense to personal contract liability an affirmative defense for purposes of Rule

8(c) of the Idaho Rules of Civil Procedure).

The Court finds that the Contract itself did not adequately disclose that

---

[10]   A certificate of assumed business name filed with the Secretary of State remains in effect until the filing of a certificate of cancellation.  Idaho Code §§ 53-506(2), 53-508.

MEMORANDUM OF DECISION - 8

Laraway was acting as the agent of Diamond Ridge Construction, Inc. At best, the

Contract is ambiguous as to the identity of the contractor. Had the Contract

indicated Laraway was signing in a representative capacity on behalf of Diamond

Ridge Construction, Inc.,[11] there would be no ambiguity and Laraway would have

no personal liability under the Contract. *See Triad Leasing*, 224 P.3d at 1096.

However, the Contract was not so executed, and the description of the contracting

party states "Diamond Ridge Construction" with no "Inc." or other indication of

corporate structure. Though the Contract refers to "Diamond Ridge Construction,

Inc." as the author of the attached building specifications, that single reference is

insufficient to overcome the ambiguities from the manner of execution and the

Contract provision identifying "Diamond Ridge Construction" as the general

contractor. *See* Ex. 100.

Laraway also contends that the footer on the building specifications, which

provides "Registered Idaho Contractor RCE-3105," supports his position that

Diamond Ridge Construction, Inc. was the contracting party because "RCE-3105"

was the contractor registration number assigned to Diamond Ridge Construction,

Inc. *See* Ex. 202.[12] The Court is unpersuaded. Wendell testified that when he

---

[11]  Such an execution would in substance read: "Diamond Ridge Construction, Inc., by Lawrence Christopher Laraway, Jr., President." The Contract here was executed: "Contractor's Signature," followed by Laraway's signature.

[12]  Under Idaho law, any person engaged in the business of, or holding himself out to be,
(continued...)

MEMORANDUM OF DECISION - 9

signed the Contract he was unaware that the footer referred to the contract

registration number of Diamond Ridge Construction, Inc.  It was not the Welches'

burden to inquire further as to the meaning of an abstruse footer in the building

specifications attached to the Contract.  The burden was on Laraway to

conspicuously inform the Welches that the contracting party was Diamond Ridge

Construction, Inc. if he desired to invoke the liability protections afforded by the

corporate structure.  *See Interlode Constructors, Inc. v. Bryant*, 974 P.2d 89,

92–93 (Idaho App. 1999).

In sum, the Contract, on its face, did not adequately disclose that Laraway

was acting as the agent of Diamond Ridge Construction, Inc.

Having found the Contract inadequate for purposes of disclosing Diamond

Ridge Construction, Inc. as Laraway's principal, the Court looks to evidence

outside the Contract to determine whether such a disclosure occurred.  Laraway

asserts that his initial meeting with the Welches should have made clear to them

that they were dealing with Diamond Ridge Construction, Inc.  Specifically,

Laraway testified that at the initial meeting he would have given the Welches a

"Client Introduction Packet," Ex. No. 212, which references Diamond Ridge

Construction, Inc.  Laraway further testified that there was a framed copy of

---

[12] (...continued)
a contractor must be registered with the State of Idaho Contractors Board.  *See* Idaho Code § 54-5204.

MEMORANDUM OF DECISION - 10

Diamond Ridge Construction, Inc.'s contractor license, Ex. 202, hanging on the

wall in the office where he met with the Welches.

The Court finds that the "Client Introduction Packet" and the presence of

the contractor's license in Laraway's office did not sufficiently disclose to the

Welches that Laraway was acting as the agent of Diamond Ridge Construction,

Inc. At trial, Wendell did not recall receiving the "Client Introduction Packet,"

and even if the Welches had received such a packet, there was no evidence that

they read it, or that they would have understood it to mean they were contracting

with Diamond Ridge Construction, Inc., not Laraway. Wendell further testified

that he never noticed the contractor's license on the wall of Laraway's office. The

onus was on Laraway to clearly indicate to the Welches, before or at the time of

the Contract, that he was acting as the agent of Diamond Ridge Construction, Inc.

*See Interlode Constructors*, 974 P.2d at 92–93. His failure to do so left him

exposed to personal liability on the Contract.

Laraway's personal liability under the Contract does not end the analysis.

While the Court finds that Laraway was a party to the Contract for purposes of

contract liability, liabilities excepted from discharge under § 523(a)(2)(A), such as

those alleged here, sound in fraud, not contract.

Corporate directors and officers may not be held liable for fraud or other

tortious wrongdoing committed by the corporation or its officers merely by virtue

MEMORANDUM OF DECISION - 11

of their office. *L.B. Indus., Inc. v. Smith*, 817 F.2d 69, 71 (9th Cir. 1987).

However, a corporate director or officer may be held liable if he specifically

directs, actively participates in, or knowingly acquiesces in the fraud or other

wrongdoing of the corporation or its officers. *Id.*; *see also See Bell v. Smith (In re*

*Smith)*, 98.4 I.B.C.R. 119, 120 (Bankr. D. Idaho 1998); *Nelson v. Post Falls*

*Mazda (In re Nelson)*, 159 B.R. 924, 925–26 (Bankr. D. Idaho 1993); *In re*

*Hawkins*, 144 B.R. 481, 484–85 (Bankr. D. Idaho 1992).

The evidence establishes Laraway as an active participant in dealing with

the Welches — he negotiated the Contract, signed it and all the Itemized Forms

and Affidavits, and was responsible for ensuring payment of the subcontractors

from the disbursed funds.  He was directly involved in every aspect of the project,

and was the only corporate officer involved in ensuring Diamond Ridge

Construction properly performed.  Thus, Laraway may be held personally liable

under § 523(a)(2)(A) to the extent the Welches' allegations that they were

defrauded are proven true.  This conclusion will rest on evidence of Laraway's

conduct, irrespective of any personal liability he had on the Contract.[13]

### B.    Section 523(a)(2)(A)

This is not the first time the Court has been tasked with considering

---

[13]  Because of this required focus on Laraway's conduct, the Court will refer to his acts in the following discussion.

MEMORANDUM OF DECISION - 12

§ 523(a)(2)(A) claims in the context of a residential construction project.  *See*, *e.g.*,

*Mire v. Ankersmit (In re Ankersmit)*, 03.1 I.B.C.R. 71 (Bankr. D. Idaho 2003)

(finding plaintiffs failed to prove all of § 523(a)(2)(A) elements with respect to

debtor contractor's failure to pay subcontractors who worked on plaintiffs' home);

*Bell v. Smith (In re Smith)*, 232 B.R. 461 (Bankr. D. Idaho 1998) (concluding

contractor's debts arising from claims of lien against plaintiffs' homes were

nondischargeable under § 523(a)(2)(A)); *Custer v. Dobbs (In re Dobbs)*, 115 B.R.

258 (Bankr. D. Idaho 1990) (same).

Section 523(a)(2)(A) excepts from discharge any debt "for money,

property, services, or an extension, renewal, or refinancing of credit, to the extent

obtained by — false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition."  To prevail

on a claim under § 523(a)(2)(A) a plaintiff must prove the following elements by a

preponderance of the evidence: (1) misrepresentation, fraudulent omission, or

deceptive conduct by the debtor in obtaining money, property, services or credit;

(2) debtor's knowledge of the falsity or deceptiveness of his statement or conduct;

(3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's

statement or conduct; and (5) damage to the creditor proximately caused by its

reliance on the debtor's statement or conduct.  *Fetty v. DL Carlson Enterprises,*

*Inc. (In re Carlson)*, 426 B.R. 840, 854 (Bankr. D. Idaho 2010) (citing Ninth

MEMORANDUM OF DECISION - 13

Circuit authorities).

In applying exceptions to discharge, the Court must construe

§ 523(a)(2)(A) strictly against the creditor and liberally in favor of the debtor so as

to avoid reading the statute more broadly than necessary to effectuate the policy of

preventing debtors from avoiding debts incurred by fraud or other culpable

conduct. *Id.*

### 1. False representations

The Welches identify three representations or groups of representations

made by Laraway that they allege constitute false representations.

### a. The pool and spa allowance

The first is the provision in the building plans and specifications

establishing a $30,000 "allowance" for the purchase and installation of a pool and

spa. The Welches claim the pool and spa allowance provision was a promissory

representation that the pool and spa they requested would be purchased and

installed for $30,000. They further contend that at the time Laraway made this

promise, he knew he could not obtain and install both the pool and spa for

$30,000.

A promise made without a present intent to perform satisfies

§ 523(a)(2)(A), as does a representation which the debtor knew or should have

known was outside of the debtor's prospective ability to perform. *Smith*, 98.4

MEMORANDUM OF DECISION - 14

I.B.C.R. at 121 (quoting *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 606

(9th Cir. BAP 1998)).

Laraway knew or should have known he would be unable to provide and

install the pool and spa for $30,000.  Laraway testified that the pool and spa

allowance in the Contract was derived from a 2006 installation list he received

from Viking Pools, Ex. 214.[14]  Therein, installation of a "Carmel" pool (the type

called for in the Welches' building plans) was listed between $29,020 and

$38,552.[15]  The least expensive spa was listed at $12,095.  Consequently, the

Viking Pools list would have dictated a minimum bid or estimate of $41,115 (i.e.,

$29,020 + $12,095), more than $11,000 above the $30,000 pool and spa allowance

Laraway represented to the Welches.  Although Laraway contends that the

$30,000 figure was merely an estimate, the Court finds his conduct, given the

information upon which he based his estimate, to be sufficiently deceptive to

satisfy the first element of § 523(a)(2)(A).[16]

---

[14]  Laraway never provided the Welches the Viking Pools installation list or any other documentation to support the pool and spa allowance.  It was only during this litigation, and more specifically when it was introduced by Laraway during the trial, that the list surfaced.

[15]  The price list offered four possible installation packages of varying cost, ranging from the least expensive, the "Bronze" package, to the most expensive, the "Platinum" package.  *See* Ex. 214.

[16]  The Welches identified other provisions in the contract and building plans that they also believed to be false representations, including a plumbing allowance of $8,000 and a roofing estimate of $16,875.06.  However, no evidence was introduced to show that Laraway did not intend to perform consistent with those estimates, nor is there sufficient evidence to infer such an

(continued...)

### b.    The Affidavits

The second set of representations identified by the Welches are Laraway's

serial assertions in the Affidavits that there were no disputes with, or debts owed

to, any mechanics, materialmen, or subcontractors for the labor or materials

furnished in the construction of the Welches' residence.  Specifically, the Welches

contend that these representations were false as to Stucco, 4 Seasons, Myers

Enterprises, and Advanced Marble, as evidenced by the claims they eventually

asserted against the Welches or their property.[17]

The evidence demonstrates that Laraway's representations with respect to

payment of these subcontractors were false.  The claims filed by the four

subcontractors for unpaid invoices belie Laraway's assertions in the Affidavits

regarding prior payment and lack of dispute.  In fact, Laraway testified that he did

not know whether all the subcontractors had been paid when he signed the

Affidavits and that, even at the time of trial, he was unsure of who had been paid.

Even absent direct evidence of knowing misrepresentation, such reckless disregard

for the truth of a representation satisfies the element that the debtor has made an

---

[16](...continued)
intent.  Indeed, the only evidence presented was Laraway's testimony that the estimates he gave
the Welches were based on bids or estimates he had received from subcontractors.

[17]   The Court recognizes that in their Complaint, the Welches did not assert the 4 Seasons
claim of lien as a basis for nondischargeability.  Having been full tried by the parties, the Court
treats the issue of the 4 Seasons claim as if raised in the pleadings.  *See* Fed. R. Bankr. P. 7015
(making applicable Fed. R. Civ. P. 15(b))  The same analysis and conclusion apply to the
Welches' claim regarding the $3,000 for appliances, which was also not pleaded in their
Complaint.

MEMORANDUM OF DECISION - 16

intentionally false representation.  *See*, *e.g.*, *Arm v. Morrison (In re Arm)*, 175 B.R. 349, 354 (9th Cir. BAP 1994).

### c.    Appliances

The final representation identified by the Welches is the July 20, 2007 Itemized Form which allocated $3,000 of yet to be disbursed funds to the purchase of appliances for the Welches' new home.  The Welches testified that no appliances were ever purchased by Laraway, and that they were later required to purchase the appliances on their own.[18]

The July 20 Itemized Form does not qualify as an intentionally false representation.  As previously noted, the understanding between Laraway and the Welches was that the disbursed funds would be used to pay the expenses identified in the Itemized Forms.  Thus, at most, listing the $3,000 for appliances constituted a promise by Laraway to use $3,000 of the yet to be disbursed funds to buy appliances.[19]  While the evidence indicates no appliances were ever purchased by Laraway, there is no proof that Laraway did not intend to use $3,000 of the funds to buy appliances when he filled out and signed the Itemized Form.  Because the Welches failed to show that Laraway did not intend to perform on his promise,

---

[18]  As evidence of the appliance purchases the Welches presented an invoice and receipt from Home Depot for $9,449.06.  *See* Exs. 110 and 111.

[19]  Laraway did not sign an Affidavit subsequent to the July 20 draw request, as that draw was the last made against the loan.  Consequently, the only representation made by Laraway concerning the appliances was the $3,000 allocation in the Itemized Form portion of the July 20 draw request.

MEMORANDUM OF DECISION - 17

their § 523(a)(2)(A) claim as to the appliances representation will be dismissed.

### 2.     Intent to Deceive

Not only must there be a representation of material fact which is false, the representation must be made with the intention and purpose to deceive. *Ankersmit*, 03.1 I.B.C.R. at 73. Intent to deceive is a question of fact that may be inferred from circumstantial evidence. *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir. 1997).

The Court finds Laraway intended to deceive the Welches regarding the $30,000 pool and spa allowance. Laraway knew at the time he executed the contract that he lacked the ability to provide and install a pool and spa to specifications for the amount of $30,000. It is reasonable to infer from the whole of this record that his purpose in presenting an infeasible allowance was to deceive the Welches as to the true cost for the pool and spa in order to induce them into signing the contract.

The Court finds Laraway also intended to deceive the Welches when he signed the Affidavits. Laraway testified that he intended to pay the subcontractors and suppliers, that all of the funds advanced to him were spent on labor and materials used in the Welches' home, that he made no profit on construction of the Welches' home, and that any unpaid invoices were solely the result of unexpected overages or upgrades the Welches requested after construction had begun. He further testified that he signed the Affidavits to keep the project moving forward,

MEMORANDUM OF DECISION - 18

and planned to pay any unpaid subcontractors with the additional funds he
expected the Welches to contribute for extra costs (those not contemplated by the
original plans and budget) that had been paid as construction progressed.

Several pieces of evidence presented at trial impeach Laraway's testimony.
First, the Itemized Forms submitted with each of the Welches' six draw requests,
Ex. 106, indicate that $44,215.88 of the funds disbursed under the loan were
allocated to "Builder Overhead and Profit," contradicting Laraway's testimony
that he realized no profit on the project.[20]

Second, the "Job Cost Detail" for the Welches' residence produced from
Diamond Ridge Construction's business records, Ex. 225 ("Detail"), when
considered together with the liens and other claims filed against the Welches,
further contradicts Laraway's testimony.  The Detail, generated August 16, 2007,
shows the draws and invoices received by Diamond Ridge Construction for the
Welches' residence.[21]  According to the Detail, Diamond Ridge Construction
received draws totaling $454,500, and invoices totaling $450,724.80, resulting in a
difference of $3,775.20.  The Detail included invoice amounts consistent with the

---

[20]  The reliability of the Itemized Forms, standing alone, is equivocal.  Indeed, the
Welches' case is largely premised on the allegation that the disbursed funds were not used in the
manner prescribed by the Itemized Forms, and the evidence, which includes the subcontractor
claims against the Welches as well as Laraway's testimony, supports this view.  Still, Laraway
never reconciled the documentary evidence with his assertions that no profit was taken.  Nor did
he establish where the money did go if not to himself or to the unpaid suppliers and
subcontractors.

[21]  The Detail does not indicate whether the invoices were actually paid.

MEMORANDUM OF DECISION - 19

claims asserted by the *unpaid* subcontractors — i.e., Stucco for $31,420, 4 Seasons for $3,810,[22] Myers Enterprises for $18,500, and Advanced Marble for $9,924.50.  Together, the Detail, showing total invoices $3,775.20 less than total draws, and the unpaid subcontractors' claims, totaling $63,654.50, suggest that at least $67,429.70 of the disbursed funds were not used in labor and materials on the Welch job.

The liens and related claims asserted against the Welches, together with the Itemized Forms and the Detail, support the inference that some of the disbursements were diverted to purposes other than payment for labor and materials used in the Welches' home.  No other rational explanation, consistent with the documentary evidence, was suggested.  Based on this evidence and these circumstances, the Court concludes that Laraway's statements in the Affidavits that no debts were owed to subcontractors were knowingly false and made with an intent to deceive the Welches and induce them into authorizing further disbursements.

### 3.    Reliance

Section 523(a)(2)(A) requires justifiable reliance.  *Smith*, 03.1 I.B.C.R. at 121 (citing *Field v. Mans*, 516 U.S. 59, 70–71 (1995)).  Justifiable reliance is a subjective standard which requires the Court to consider the qualities and

---

[22]  *See supra* note 6.

MEMORANDUM OF DECISION - 20

characteristics of the particular plaintiff, the knowledge and relationship of the

parties, and all of the circumstances surrounding the particular transaction. *Field*,

516 U.S. at 71; *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh

(In re Kirsh)*, 973 F.2d 1454, 1458–60 (9th Cir. 1992). While justifiable reliance

does not require that a creditor investigate the truth of the representation in each

case, an investigation is required "where, under the circumstances, the facts should

be apparent to one of his knowledge and intelligence from a cursory glance, or he

has discovered something which should serve as a warning that he is being

deceived." *Smith*, 03.1 I.B.C.R. at 122 (quoting *Field*, 516 U.S. at 71).

The Welches justifiably relied on the $30,000 pool and spa allowance in the

Contract. They specifically requested that the pool and spa be included in the

building plans before signing the contract, and testified that it was a material term.

The Welches also justifiably relied on Laraway's representations in the

Affidavits that all the subcontractors had been paid. They relied on the fact that

outstanding costs were being paid from monies disbursed to Diamond Ridge

Construction. It was only after all six draws had been made against the loan that

the Welches discovered Laraway had not paid some of the subcontractors. There

were no circumstances which would have served as a warning to the Welches that

they were being deceived and the subcontractors were going unpaid. It is also

reasonable for the Court to accept the Welches' assertions that, had they known

the subcontractors were not being paid, further disbursements would have been

MEMORANDUM OF DECISION - 21

conditioned or suspended pending resolution of any unpaid subcontractor bills.

### 4.    Loss suffered

The Welches have not shown they were damaged by their reliance on the

$30,000 pool and spa allowance.  The $30,000 earmarked for the pool and spa was

never drawn out from the available loan proceeds, and the Welches presented no

evidence to show that they incurred any additional cost by carrying that amount on

the loan.  Nor did they present evidence of legal fees or other costs resulting from

reliance on the pool and spa allowance.  The Welches bear the burden of proving

that they were damaged by their reliance on Laraway's representation, which they

have failed to do.  Because the Welches have not proven they were damaged by

their reliance, they cannot prevail on their § 523(a)(2)(A) claim as to the pool and

spa allowance.

The Welches did suffer a financial loss as a direct result of their reliance on

Laraway's statements in the Affidavits.  They were forced to pay $22,810 to settle

claims of lien — $19,000 to Stucco and $3,810 to 4 Seasons.  While Wendell

testified that the Welches also incurred attorney's fees and costs in conjunction

with the Stucco lien, no evidence was presented regarding the amounts of those

fees and costs.  In the absence of such evidence, the Court lacks the specificity

required to include attorney's fees and costs incurred by the Welches as part of the

damage caused by Laraway's representations.  *See Carlson*, 426 B.R. at 858 ("A

plaintiff must prove the specific amount of the damage caused by the fraudulent

MEMORANDUM OF DECISION - 22

representation.").  Consequently, the Court finds that the Welches were damaged in the amount of $22,810.

###  C.    Setoff

At trial, Laraway argued that any liability the Court found on his part should be reduced by the $30,000 of the $484,500 contract price the Welches never disbursed to Diamond Ridge Construction.  Laraway's argument is in essence one for setoff — the adjustment of mutual debts arising out of separate transactions between the parties.  *See SAIF Corp. v. Harmon (In re Harmon)*, 188 B.R. 421, 425 (9th Cir. BAP 1995).[23]  To invoke a right to setoff there must be mutuality. "Mutuality is satisfied when the 'parties have concurrent rights against each other.'"  *In re Lifestyle Furnishings, LLC*, 418 B.R. 382, 386 (Bankr. D. Idaho 2009) (quoting *In re Hipwell*, 97.1 I.B.C.R. 25, 27, 1997 WL 34584333, at *3 (Bankr. D. Idaho 1997)).

Here, there is no mutuality because Laraway holds no right against the Welches.  As noted previously, the Contract and loan documents contemplated payment in stages upon the completion of work.  The pool and spa were never installed.  Accordingly, Laraway had no right to the $30,000 to be paid out for that work.

Moreover, even if Laraway had such a right under the Contract, that right

---

[23]   The transactions at issue here would be "separate" because the $30,000 claim alluded to by Laraway is a contract liability, while his debt to the Welches sounds in fraud.

MEMORANDUM OF DECISION - 23

became part of Laraway's bankruptcy estate when he filed his chapter 7 petition. *See Kaler v. Craig (In re Craig)*, 144 F.3d 593, 596 (8th Cir. 1998) ("A debtor's right to setoff is property of the bankruptcy estate.") (citing 5 Collier on Bankruptcy ¶ 553.03[7][b] (Lawrence P. King ed., 15th ed. 1998)).[24]  Therefore, the Court concludes that Laraway has no right to the remaining $30,000, and those funds are unavailable to Laraway as a means to reduce or offset his liability under § 523(a)(2)(A).

### D.    Attorney's Fees

In their Complaint, the Welches request an award for attorney's fees incurred in prosecuting this action.  To recover attorney's fees incurred in pursuing a § 523(a)(2)(A) action, a creditor must be able to recover the fees outside the bankruptcy court under state or federal law.  *Kilborn v. Haun (In re Haun)*, 396 B.R. 522, 526–27 (Bankr. D. Idaho 2008) (quoting *Levitt v. Cook (In re Levitt)*, BAP No. AZ-07-1166 (9th Cir. BAP July 22, 2008)).

The Welches request attorney's fees "pursuant to an applicable section of the bankruptcy code, common law, or to the extent not exempted, state law." First, there is no general right to recover attorney's fees under the Bankruptcy Code.  *Id.* at 526.  Second, under Idaho law, to recover on a claim for attorney's fees a party must assert in its pleadings the *specific* statute, rule or case authority

---

[24]  Laraway did not schedule a contract claim against the Welches in either Diamond Ridge Construction, Inc's bankruptcy case, Case No. 08-01342-TLM, or his own personal bankruptcy case, Case No. 09-01831-TLM.

MEMORANDUM OF DECISION - 24

supporting its claim.  *Id.* at 528 (citing *Hopkins v. Saratoga Holdings, LLC (In re Colvin)*, 08.2 I.B.C.R. 63, 65 2008 WL 1957855, at *4 (Bankr. D. Idaho 2008)).

The Welches failed to so identify specific authority that would entitle them to attorney's fees.  Therefore, their request for fees is denied.

**CONCLUSION**

Based upon the reasons set forth above, the Court finds that the Welches' have proven the requirements necessary under § 523(a)(2)(A) to support a judgment by this Court that debts arising from the settlement of claims of lien against the Welches' home in the amount of $22,810 should be excepted from discharge.

Counsel for the Welches shall submit an appropriate order and form of judgment.

DATED: September 13, 2010

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 25